UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                    Case No. 21-20398
                                                      Honorable Victoria A. Roberts

KEVIN LAVON GILES,

     Defendant.

_____/

## ORDER DENYING GILES': (1) MOTION TO SUPPRESS [ECF No. 71] AND (2) ORAL MOTION FOR BOND

## I.   INTRODUCTION

On February 17, 2022, a grand jury returned a Superseding Indictment charging Kevin Lavon Giles ("Giles") with two counts of sex trafficking of children, one count of sex trafficking by force, fraud, and coercion, and one count of commission of a felony offense involving a minor by a registered sex offender – violations of 18 U.S.C. §§ 1591(a) and 2260A. [ECF No. 60].

Giles moves to suppress all evidence seized during the execution of a search warrant at his residence. [ECF No. 71]. The Court heard oral argument on this motion on August 11, 2022. At issue is whether statements, relayed to police by a third-party and uncorroborated by police,

1

sufficiently establish probable cause for a search warrant. This Court finds

that they do and **DENIES** Giles' motion. [ECF No. 71].

## II.    BACKGROUND

Giles challenges the sufficiency of the affidavit supporting the search

warrant – i.e., he argues that the affidavit did not establish probable cause

to support the warrant. Therefore, except where noted, the Court limits the

facts to those contained in the challenged affidavit.

Officer Michael Strunk ("Strunk") of the Detroit Police Department

("DPD") applied for the warrant on April 22, 2021. [ECF No. 71-2,

PageID.324]. Most of the probable cause portion of the affidavit consists of

Strunk restating information that other sources relayed to him. [*Id.* at

PageID.319–22].

One of those sources, a Michigan Child Protective Services ("CPS")

worker assigned to Minor Victim 1 ("MV-1"), obtained her information from

conversations with MV-1, Minor Victim 2 ("MV-2"), Giles, and Witness 1, a

family friend of MV-1. [*Id.* at PageID.320–22].

MV-1 spoke with the CPS worker on or about April 21, 2021. [*Id.* at

PageID.322]. The affidavit details the substance of their conversation, as

told to Strunk:

> …MV-1 told [the CPS worker] that she met Giles approximately
> two months ago at a night club. Giles told MV-1 that she could

move into his house for free with her 9-month-old son. Within a day or two of moving into the house, Giles attempted to have sex with MV-1. When MV-1 refused, he told her she was no longer allowed to live in [the] house for free and that she would owe him rent. MV-1 recalled paying Giles approximately $400 for that month of February and approximately $450 for the month of March.

MV-1 further stated that in order to make money for rent, she began engaging in commercial sex inside Giles residence. While engaging in commercial sex, MV-1 would leave her son in another room in the house or under the care of MV-2. Giles originally would take approximately $20 of proceeds from MV-1 for every time she engaged in commercial sex, however, Giles eventually began taking all of MV-1's proceeds. On or about April 9, 2021, Giles told MV-1 that she would have to pay higher rent. When MV-1 refused, he kicked MV-1 out of the house.

MV-1 also stated that she observed approximately ten additional juvenile females who engaged in commercial sex at Giles residence. MV-1 stated that Giles would make the "older" girls engage in actual sex acts for money and the "younger" (i.e. girls younger than MV-1) dance and strip for money at the parties. Giles provided all of the girls with alcohol, adderal (*sic*) and ecstasy. Giles runs a cleaning business called "Triple-X All Purpose Cleaning" which is really a front for providing strippers for parties.

[*Id*.].

The CPS worker informed Strunk that she spoke to Witness 1 around

April 21, 2022. [ECF No. 71-2, PageID.321]. The affidavit details what

Strunk says she told him about that conversation:

…Witness 1 told CPS Worker that she is in contact with MV-1 and has spoken to MV-1 about Giles. MV-1 stated that she met Giles approximately two months ago at an after hours club, where MV-1 was prostituting. Giles offered to rent a room in his

3

residence located at 12943 Pembroke, Detroit, Michigan 48235
to MV-1 for the amount of $250 per month. Shortly after MV-1
moved in, Giles asked MV-1 to share a bedroom with him. MV-
1 has since moved out of the residence for unknown reasons.
After moving out on or about April 9, 2021, MV-1 asked Witness
1 to go to the house to retrieve her belongings. Witness 1 went
to Giles residence on or about April 10, 2021 and observed a
very young African-American female with tattoos on her
abdomen and back, walking around the inside of the residence
wearing a bra and panties.

[*Id*.].

The CPS worker spoke to MV-2 around the same time. [ECF No. 71-

2, PageID.321]. The affidavit details the substance of their conversation, as

told to Strunk:

…MV-2 stated that she had spent one night at Giles' residence
on or about April 16, 2021. MV-2 was at Giles' residence to
attend her "fake birthday party". (*sic*) While at the residence,
MV-2 observed MV-1 and "a lot of girls" at the party, all of
whom were engaging in commercial sex acts. MV-2 further
stated that Giles had security cameras at the house, specifically
in the living room, Giles bedroom and outside the house, which
Giles used to watch customers who were in the house with the
purpose of meeting to engage in commercial sex with MV-1,
MV-2 and others.

[*Id.*].

The CPS worker's investigation extended to Giles; she spoke to him

on or around April 20, 2021. [ECF No. 71-2, PageID.320]. Again, the

affidavit details the substance of the conversation with Giles, as told to

Strunk:

4

> …Giles stated that both MV-1 and MV-2 had previously been renting rooms at his residence located at 12943 Pembroke, Detroit, MI. When CPS worker asked Giles how the victims were able to afford the rent, Giles stated that both MV-1 and MV-2 were engaging in commercial sex acts inside and outside of the residence and then using the proceeds to pay Giles. Giles further stated that when he realized [MV-1 and MV-2] were engaging in commercial sex acts, he kicked them out of his residence.

[*Id.*].

Strunk also obtained information from MV-1's school, Vista Maria School:

> On or around April 16, 2021, Vista Maria again reached out to your Affiant and stated that they received information from a family friend of MV-1, stating that MV-1 had been staying at 12943 Pembroke, Detroit, MI with a man named Kevin Lavon Giles, DOB 01/05/1966 and another juvenile female, Minor Victim 2…DOB 12/[redacted]/2004 (16 years old).

> On or around April 16, 2021, Vista Maria further provided information to your Affiant that that (*sic*) Giles was taking all of MV-1 and MV-2's money that they were making by having "dates" at Giles's residence.

[*Id.*].

The rest of the probable cause portion of the affidavit details Strunk's experience and investigative efforts. [ECF No. 71-2, PageID.319, 321–22]. The probable cause section also supplies a basis for searching electronically stored information. [*Id.* at PageID.322–324].

5

The affidavit thoroughly describes the property "to be searched for and seized" to include a litany of items ranging from computers and electronically stored information to indicia of occupancy and human trafficking. [*Id*. at PageID.317–19]. The affidavit describes the place "to be searched" as "12943 Pembroke, Detroit, Michigan 48235" and any detached garages and vehicles. [*Id.* at PageID.317]. The affidavit describes the external appearance and geographic location of the home. [*Id*.].

A magistrate judge of the 3rd Circuit Court of Michigan found that the affidavit established probable cause to issue a search warrant for Giles' residence. [ECF No. 71-2, PageID.327].

According to the criminal complaint, on April 24, 2021, members of the Southeast Michigan Trafficking and Exploitation Crimes ("SEMTEC") Task Force executed the search warrant at Giles' residence. [ECF No. 1, PageID.5]. On arrival, SEMTEC encountered Giles, Adult Victim One (AV-1), and AV-1's one-year-old child. [*Id*.]. SEMTEC seized cell phones belonging to Giles and AV-1 as well as two security cameras located in Giles' kitchen and bedroom. [ECF No.1, PageID.6].

Forensic review of Giles' cellphones revealed texts between Giles, MV-1, MV-2, and AV-1 that, according to the officer who filed the complaint,

6

allegedly included language consistent with commercial sex trafficking.  [*Id.* at PageID.6–11]. These texts form the basis of the criminal complaint. [*Id.*].

## III.   LEGAL STANDARD

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  "In order to conclude that an affidavit establishes probable cause, the issuing judge must find that 'given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  A fair probability requires only "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

A magistrate may rely on hearsay contained in the affidavit in making a probable cause determination. *United States v. Johnson*, 514 F. App'x.

7

533, 539 (6th Cir. 2013) (citing *United States v. Gunter*, 551 F.3d 472, 479

(6th Cir. 2009)).  When most of the information in the affidavit is based on

information provided by a confidential source, evidence of that informant's

reliability, veracity, and basis of knowledge is highly relevant in analyzing

the totality of the circumstances in the affidavit. *Johnson*, 514 F. App'x. at

539. However, "statements of victims and eyewitnesses of crimes are

entitled to a presumption of reliability and veracity without independent

corroboration." *United States v. Ingram*, No. 92-5367, 1993 WL 5914 at *2

(6th Cir. Jan. 13, 1993).

To establish probable cause, there must be "a nexus between the

place to be searched and the evidence sought." *United States v.

McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).  "In other words, the

affidavit must suggest 'that there is reasonable cause to believe that the

specific things to be searched for and seized are located on the property to

which entry is sought' and not merely 'that the owner of property is

suspected of crime.'"  *Id.* (citation omitted).

The duty of a reviewing court is to "ensure that the magistrate had a

substantial basis for concluding that probable cause existed." *Gates*, 462

U.S. at 238–39 (internal quotations omitted) (citations omitted). In reviewing

a warrant application for probable cause, the Court must: (1) "'read the

affidavit reasonably ... holistically, examining the totality of the circumstances and employing a healthy dose of common sense'"; and (2) "consider both the facts outlined in the affidavit and the reasonable inferences permissibly drawn from those facts."  *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (citation omitted).  Moreover, the Court must accord a magistrate judge's determination of probable cause "great deference," reversing it only if the magistrate judge exercised discretion arbitrarily. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

## IV.   ANALYSIS

Giles asserts that the affidavit was deficient because Strunk did not corroborate statements made to CPS or Vista Maria School. Giles argues that such statements came from unreliable sources. The government disagrees; it argues that: (1) Strunk received information from multiple, mutually corroborating sources; and (2) Giles' statements to the CPS worker corroborated MV-1's and MV-2's statements to the CPS worker.

### A. MV-1 and MV-2 Statements are Entitled to a Presumption of Reliability

As victims of and eyewitnesses to sex trafficking, MV-1 and MV-2 are entitled to a presumption of reliability and veracity without independent corroboration. *Ingram*, 1993 WL 5914 at *2. This is an important point to

9

make because both parties cite to *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003), which addresses the standard for evaluating hearsay evidence from a confidential informant or an anonymous tipster, not a victim or an eyewitness. The Sixth Circuit recognizes distinctions between different types of informants. *United States v. Baker*, 976 F.3d 636, 649 (6th Cir. 2020). The standard announced in *Ingram* governs here, and the Court will presume the reliability and veracity of MV-1's and MV-2's statements despite little to no independent corroboration by DPD. *Ingram*, 1993 WL 5914 at *2.

## B. MV-1 and MV-2 Established a Sufficient Nexus Between Giles' Residence and Evidence of Sex Trafficking

MV-1's and MV-2's statements to the CPS worker established a sufficient nexus between Giles' residence and evidence that Giles engaged in sex trafficking.

First, MV-1 told CPS that Giles took money that MV-1 earned from engaging in commercial sex acts inside of Giles' residence. [ECF No. 71-2, PageID.322].

Second, MV-1 witnessed Giles trafficking others. In her conversation with CPS, MV-1 detailed that Giles made "older" girls exchange sex for money and made "younger" girls dance and strip for money at his

residence. [*Id*.]. This is similar to MV-2's statement that, while at Giles' residence for her "fake birthday party," she observed MV-1 and many other girls engaged in commercial sex acts. [*Id.* at PageID.321].

Third, MV-2 reported that Giles used security cameras inside his residence to watch customers engage in commercial sex acts with MV-1, MV-2, and others. [*Id*.].

These statements establish a sufficient nexus between Giles' home and evidence that he might be engaged in sex trafficking. A magistrate judge had a substantial basis to conclude that there might be financial or video evidence of Giles sex trafficking minors in his residence.

The Court recognizes that much of the affidavit does not establish that Giles was sex trafficking minors in his residence. [*Id.* at PageID.320–22]. Additionally, none of the affidavit establishes the reliability of Witness 1 or the family friend of MV-1 who provided information to Vista Maria School. However, the accounts of MV-1 and MV-2 are sufficient and allege that Giles was active in trafficking others and not a mere bystander.

## C. The Magistrate Judge Could Rely on Double Hearsay

Giles attempts to undermine the credibility of the CPS worker's statements in the search warrant affidavit by characterizing the statements as "double hearsay." [ECF No. 71, PageID.306, 308].  But magistrate

judges can rely on hearsay evidence in deciding whether there is probable cause. *Johnson*, 514 F. App'x. at 539.

Double hearsay or "hearsay upon hearsay" refers to an out-of-court statement offered for the truth of the matter asserted which, within it, contains another out-of-court statement offered for the truth of the matter asserted. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liability Litig.*, 512 F. Supp. 3d 803, 812–13 (S.D. Ohio 2021) (citing *Back v. Nestle USA, Inc.,* 694 F.3d 571, 577–78 (6th Cir. 2012)). Because MV-1 and MV-2 relayed first-hand information to the CPS worker, who then relayed that information to Strunk, the CPS worker's statements constitute double hearsay. *Back*, 694 F.3d at 577–78.

Importantly, the nature of the hearsay does not defeat a finding of probable cause because a magistrate may consider "hearsay upon hearsay." *United States v. Mallet*, No. 96-3897, 1997 WL 809999 at *4 (6th Cir. Dec. 30, 1997).

The nature of the hearsay also does not affect the presumption of reliability. *See United States v. Hollingsworth*, 495 F.3d 795, 805 (7th Cir. 2007) (holding that the nature of the hearsay did not matter because the individuals providing the information to the magistrate judge were reliable

where a minor told a school social worker, who then told a police officer, about the marijuana and "drug runs" the minor witnessed at home).

Both Giles and the government agree that the CPS worker was credible and reliable. [ECF No. 71, PageID.306–07; ECF No. 74, PageID.373]. MV-1 and MV-2 recounted their first-hand experiences to a CPS worker, a source that the parties agree is reliable. The CPS worker then relayed those experiences to Strunk, the author of the affidavit.

Despite the nature of the hearsay, the information that Strunk presented to the magistrate judge was reliable.

## V.   CONCLUSION

After examining the totality of the circumstances, the Court finds that the affidavit established probable cause, and the officers' reliance on the search warrant was objectively reasonable. The magistrate judge exercised discretion properly and not arbitrarily, and the Court defers to that judge's probable cause determination. *Coffee*, 434 F.3d at 892.

The Court **DENIES** Giles' motion to suppress evidence. [ECF No. 71].

## VI.   ORAL MOTION FOR RELEASE ON BOND

At the August 11, 2022 hearing, Giles renewed his motion for Release on Bond. [ECF No. 48]. Giles presented no evidence that would

change the Court's earlier determination that he was not entitled to bond.

[ECF No. 53]. The Court **DENIES** Giles' Bond motion.

      **IT IS ORDERED**.

s/ Victoria A. Roberts

Victoria A. Roberts
United States District Judge

Dated:  August 17, 2022