UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:21-CR-20398-TGB-KGA** |
| Plaintiff, | |
| vs. | HON. TERRENCE G. BERG |
| **KEVIN LAVON GILES,** | **OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL (ECF NO. 317)** |
| Defendant. | |

Before the Court is Defendant Kevin Lavon Giles's motion for judgment of acquittal 'or for a new trial. ECF No. 317. For the following reasons, Defendant's motion is **DENIED IN PART** and **GRANTED IN PART**.

## I. BACKGROUND

Defendant Giles was indicted by a grand jury on February 17, 2022 for two counts of Sex Trafficking of Children, 18 U.S.C. § 1591(a) (Counts 1 and 2), one count of Sex Trafficking by Force, Fraud, and Coercion, § 1591(a) (Count 3), and one count of Commission of a Felony Offense Involving a Minor by a Registered Sex Offender, 18 U.S.C. § 2260A (Count 4). ECF No. 60. Count 1 pertained to the sex trafficking of a minor victim identified as MV-1. Count 2 pertained to the sex trafficking of a

1

minor victim identified as MV-2. Count 2 pertained to the sex trafficking of an adult victim identified as AV-1. *Id.*

On July 23, 2025, after a jury trial, Mr. Giles was found guilty of all counts. ECF No. 307.

On August 27, 2025, Mr. Giles filed a motion for judgment of acquittal under Fed. R. Crim. P. 29, or, in the alternative, for a new trial under Fed. R. Crim. P. 33. ECF No. 317.[1] On October 22, 2025, the Government responded. ECF No. 321. On November 9, 2025, Mr. Giles replied. ECF No. 322.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 29(c), a defendant may move for a judgment of acquittal after a jury verdict. Fed. R. Crim. P. 29(c). The court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(c).

"Evidence is sufficient to sustain a conviction if after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony,* any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v.*

---

[1] At times, Giles refers to "FRE Rule 29" or "FRE Rule 33." *See, e.g.*, ECF No. 317, PageID.3015. Because there is no Federal Rule of Evidence 29 or 33, the Court construes these references to be to the Federal Rules of Criminal Procedure 29 and 33.

*Driver*, 535 F.3d 424, 428 (6th Cir. 2008) (cleaned up). "In examining claims of insufficient evidence, this court does not weigh the evidence presented, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Id.* at 429 (cleaned up). "Moreover, circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Robinson*, 99 F.4th 344, 353–54 (6th Cir. 2024) (cleaned up). Indeed, "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021) (citation omitted).

Under Federal Rule of Criminal Procedure 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). While "[t]he rule does not define interest of justice and the courts have had little success in trying to generalize its meaning … from the body of Rule 33 case law, several recurring themes emerge." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (cleaned up).

Rule 33 can be used "to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *Id.* (cleaned up). Mr. Giles appears to move under Rule 33 on this ground. *See* ECF No. 317, PageID.3017.

Motions based on this ground "are disfavored, discretionary, and granted only in the extraordinary circumstance where the evidence

preponderates heavily against the verdict," *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019), and "the verdict exceeds the bounds of reasonableness," *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020). "The verdict is not unreasonable simply because different inferences could have been drawn or because other results are more reasonable." *Id.* (cleaned up). Instead, a verdict is only unreasonable in such exceptional circumstances when a "trial[] featur[es] accounts that defy physical realities or collapse in on themselves due to internal inconsistencies." *Id.* at 628 (cleaned up). "It's only when [such] exceptional circumstances arise that a trial judge may intrude upon the jury function of credibility assessment." *Id.* (cleaned up).

## III. DISCUSSION

Mr. Giles moves for a judgment of acquittal under Fed. R. Crim. P. 29, or, in the alternative, for a new trial under Fed. R. Crim. P. 33 as to each count on which he was convicted. *See* ECF No. 317. The Court addresses each count in turn.

### A.   Counts 1 and 2

Counts 1, 2, and 3 charge Defendant under 18 U.S.C. § 1591(a). Under § 1591(a) the Government needs to prove that the Mr. Giles knowingly—

> (1) … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

§ 1591(a). Accordingly, § 1591(a) covers sex trafficking of children and sex trafficking by force, fraud, and coercion. *See United States v. Afyare*, 632 F. App'x 272, 275 (6th Cir. 2016); ECF No. 306 (jury instructions).

Under Count 1, pertaining to MV-1, the jury found Mr. Giles guilty of both sex trafficking of persons under the age of 18 and sex trafficking by force, fraud, and coercion. ECF No. 307, PageID.2578. Under Count 2, pertaining to MV-2, the jury found Mr. Giles guilty of both sex trafficking of persons under the age of 18 and sex trafficking by force, fraud, and coercion. ECF No. 307, PageID.2579.

Mr. Giles "contends that the facts presented at trial were insufficient to prove beyond a reasonable doubt that he was aware that [MV-1 and MV-2] were under the age of 18 during the time that the commercial sex acts were occurring" and that "the evidence was insufficient to show Mr. Giles used force, fraud, or coercion to cause [MV-1 and MV-2] to engage in commercial sex acts." ECF No. 317, PageID.3018–19. We address these two arguments in turn.

5

### 1. *Age of MV-1 and MV-2*

Under § 1591(a)—with regard to the statute's application to sex trafficking of children—the Government must prove that the defendant knew or was "in reckless disregard of the fact … the person has not attained the age of 18 years." However, under § 1591(c), when the defendant has "had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18."

The Government argues that evidence sufficient to sustain a conviction as to "all three ways as to both minor victims" was presented at trial. ECF No. 321, PageID.3096–97. The Court agrees.

The following evidence was presented at trial that would allow a rational trier of fact to find that Mr. Giles knew or was in reckless disregard of the fact that MV-1 and MV-2 were under the age of 18 years old.

First, MV-2 testified that MV-1 told Mr. Giles "how old we were." ECF No. 303, PageID.2069. When asked "How old did she say she was?" MV-2 responded "She was 17 at the time. I was 16. After she told him, I just told him how old I was." *Id.* MV-2 then testified that after this conversation occurred, she continued commercial sex work at Mr. Giles's house and continued to pay him money. *Id.*

Second, MV-1 testified that she told Mr. Giles that she "was 16, 17" while she was living at Mr. Giles's house. *Id.* at PageID.2127. MV-1 then

testified that after she told Mr. Giles her age, she continued commercial sex work at Mr. Giles's house and continued to pay him "half of the proceeds." *Id.*

Third, both MV-1 and MV-2 testified that Mr. Giles used his own ID to post advertisements for their commercial sex work online. *Id.* at PageID.2060, 2130. MV-1 answered affirmatively when asked whether "you have to be over 18 to have your own account on" the website on which their sex work was advertised. *Id.* at PageID.2130.

Based on this evidence, a rational trier of fact could easily find that Mr. Giles knew or was in reckless disregard of the fact that MV-1 and MV-2 were under the age of 18 years.

Additional evidence presented at trial that would allow a rational trier of fact to find that Mr. Giles had a reasonable opportunity to observe MV-1 and MV-2 included the following.

First, both MV-1 and MV-2 testified that they lived with Mr. Giles for several weeks. *Id.* at PageID.2036, 2111, 2128.

Second, MV-1 testified that she had sex with Mr. Giles "two, three times" a "couple weeks after [she] moved in" to his house. *Id.* at PageID.2128.

Third, the Government presented photographs of the minor victims at Mr. Giles's house and of MV-2 with Mr. Giles. *Id.* at PageID.2047, 2080–88. From these photos, the jury could see and assess the

appearance of MV-1 and MV-2 during the relevant time period and could reasonably infer that they appeared that way to Mr. Giles.

Based on this evidence, a rational trier of fact could easily find that Mr. Giles had a reasonable opportunity to observe MV-1 and MV-2. In fact, the Sixth Circuit has found that considerably less evidence is sufficient to show a reasonable opportunity to observe. *See United States v. Davis*, 711 F. App'x 254, 258 (6th Cir. 2017) (finding that evidence showing the defendant spending two days with minor victim and taking a picture of the minor victim amounts to "establish[] sufficient facts from which a jury could reasonably infer [defendant] had a 'reasonable opportunity to observe' [minor victim]").

Mr. Giles's arguments to the contrary do not compel a different outcome. Mr. Giles argues that some trial testimony raises doubt as to MV-1 and MV-2's memory; that MV-1 testified that she initially told Mr. Giles that she was 19 years old; and that there was a discrepancy between MV-1 and MV-2's testimony as to when they revealed their actual age to Mr. Giles. ECF No. 317, PageID.3018.

Mr. Giles's arguments amount to a challenge to the credibility of the witnesses and ask the Court to weigh the evidence presented to the jury. However, under Rule 29(c), the Court will not "weigh the evidence presented, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Driver*, 535 F.3d at 429. Given the evidence presented, when viewed in the light most favorable to the prosecution,

8

and giving the Government the benefit of all inferences that could reasonably be drawn from the testimony, *see id.*, any rational trier of fact could easily find beyond a reasonable doubt that Mr. Giles knew or was "in reckless disregard of the fact … the [MV-1 and MV-2 had] not attained the age of 18 years", § 1591(a), *or* that Mr. Giles "had a reasonable opportunity to observe [MV-1 and MV-2]," § 1591(c). Accordingly, Mr. Giles has not met the heavy burden of Rule 29(c). *Emmons*, 8 F.4th at 478.

Nor, in light of the testimony discussed, does the Court conclude that the verdict is unreasonable under Rule 33. *See Burks*, 974 F.3d at 628 (finding that a verdict is only unreasonable in such exceptional circumstances when a "trial[] featur[es] accounts that defy physical realities or collapse in on themselves due to internal inconsistencies" (cleaned up)).

### 2. Whether MV-1 and MV-2 were under force, fraud, or coercion

Under § 1591(a)—with regard to the statute's application to sex trafficking by force, fraud, or coercion—the Government must prove that the defendant knew or was "in reckless disregard of the fact … that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act." Section 1591(e)(2) defines coercion as

(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause

9

a person to believe that failure to perform an act would result
in serious harm to or physical restraint against any person; or
(C) the abuse or threatened abuse of law or the legal process.

The jury was instructed as to the first two definitions. *See* ECF No. 306,

PageID.2547. The jury was also instructed that

> [i]n considering whether force, threats of force, fraud or
> coercion would be sufficient to cause a person to engage in a
> commercial sex act, you may consider an alleged victim's
> special vulnerabilities, if any. Simply put, you may ask
> whether the alleged victim was vulnerable in some way such
> that the actions of the defendant would have been sufficient
> to compel a reasonable person of the same background and in
> the same circumstances to engage in a commercial sex act.

*Id.* This instruction tracks the statutory definition of serious harm. *See*

§ 1591(e); *United States v. Fields*, 625 F. App'x 949, 952 (11th Cir. 2015)

("The district court's explanation regarding victims with special

vulnerabilities was a direct application of the statutory definition of

'serious harm' to the facts of this case."); *United States v. Kozminski*, 487

U.S. 931, 952 (1988) ("the vulnerabilities of the victim are relevant in

determining whether the physical or legal coercion or threats thereof

could plausibly have compelled the victim to serve").

The Government argues that it presented sufficient evidence "for a

rational juror to conclude that Giles coerced MV-1 and MV-2 to engage in

commercial sex work." ECF No. 321, Page3099. The Court agrees.

The following evidence was presented at trial that would allow a

rational trier of fact to find beyond a reasonable doubt that Mr. Giles

knew or was "in reckless disregard of the fact … that means of force,

10

threats of force, fraud, coercion …, or any combination of such means will be used to cause [MV-1 and MV-2] to engage in a commercial sex act." § 1591(a).

First, MV-2 testified that when she began living at Mr. Giles's house, she was sixteen years old, had a one-year-old daughter, and didn't have a job. ECF No. 303, PageID.2036, 2050. MV-2 testified that when MV-1 and she informed Mr. Giles that they were unable to pay the rent he was charging them because they were unemployed, Mr. Giles told them they "could make money" by performing commercial sex work. *Id.* at PageID.2050.

Similarly, MV-1 testified that when she began living at Mr. Giles's house, she was seventeen years old, had a son that was a couple months old, was living "place-to-place," and was looking for a stable place to live. *Id.* at PageID.2121–23. MV-1 testified that she did not have a job when she moved into Mr. Giles's house and made money to pay rent by engaging in commercial sex work. *Id.* at PageID.2126. MV-1 also testified that she paid Mr. Giles half of the proceeds from her commercial sex work, additionally to the rent she was paying him. *Id.* at PageID.2127.

Second, MV-2 testified that Mr. Giles threatened her when she "didn't want to keep paying him all that money … [f]rom tricking." *Id.* at PageID.2073. MV-2 testified that initially "he would threaten me to make me leave. And then when I wanted to leave, he didn't want me to leave." *Id.* MV-2 further testified that she did not have anywhere else to go. *Id.*

11

MV-2 testified that Mr. Giles "made [her] feel very threatened." *Id.* at PageID.2076.

Third, MV-1 testified that she had sex with Mr. Giles in order to be allowed to continue staying at Mr. Giles's house. *Id.* at PageID.2129. MV-1 testified that she did not want to have sex with Mr. Giles. *Id.* at PageID.2128,

Fourth, MV-1 testified that after she informed Mr. Giles that she did not want to continue doing commercial sex work, Mr. Giles told her that she had "to do it" in order to continue staying in his house. *Id.* at PageID.2134–35.

Based on this evidence, a rational trier of fact could easily find that Mr. Giles knew or was "in reckless disregard of the fact … that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause [MV-1 and MV-2] to engage in a commercial sex act." § 1591(a). This conclusion is in line with those of other courts that have held that exploiting a mother's fear of homelessness amounts to a serious harm in violation of § 1591(a). *See, e.g., Glagola v. MacFann*, 701 F. Supp. 3d 274, 284 (W.D. Pa. 2023); *United States v. Shine*, 2022 WL 761520, at *2 (2d Cir. Mar. 14, 2022) (holding that "exploit[ing] victims' fear of homelessness" is evidence of coercion under § 1591(a)).

Mr. Giles's arguments to the contrary are unavailing. Mr. Giles argues that some trial testimony raises doubt as to MV-1 and MV-2's memory; that evidence presented in text messages show that neither MV-

1 nor MV-2 feared Mr. Giles and that they had "the freedom to do what they wished"; and that there "was evidence presented that [MV-1 and MV-2] at least had some control over the internet postings that were presented by the Government at trial." ECF No. 317, PageID.3018.

These arguments amount to a challenge to the credibility of the witnesses and ask the Court to weigh the evidence presented to the jury. However, under Rule 29(c), the Court will not "weigh the evidence presented, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Driver*, 535 F.3d at 429. Given the evidence presented, when viewed in the light most favorable to the prosecution, and giving the Government the benefit of all inferences that could reasonably be drawn from the testimony, *see id.*, any rational trier of fact could easily find that Mr. Giles knew or was "in reckless disregard of the fact … that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause [MV-1 and MV-2] to engage in a commercial sex act." § 1591(a). Accordingly, Mr. Giles has not met the very heavy burden of Rule 29(c). *Emmons*, 8 F.4th at 478.

Nor, in light of the testimony discussed, does the Court conclude that the verdict is unreasonable under Rule 33. *See Burks*, 974 F.3d at 628 (finding that a verdict is only unreasonable in such exceptional circumstances when a "trial[] featur[es] accounts that defy physical realities or collapse in on themselves due to internal inconsistencies" (cleaned up)).

13

Accordingly, for the reasons above, Mr. Giles's motion for judgment of acquittal or for a new trial is **DENIED** as to Count 1 and 2.

### B. Count 3

Under Count 3, pertaining to AV-1, the jury found Mr. Giles guilty of sex trafficking by force, fraud, and coercion. ECF No. 307, PageID.2579. Mr. Giles "contends that the evidence presented was insufficient to convict him for sex trafficking and as such the Court should either grant him a new trial or acquit him of this charge." ECF No. 317, PageID.3019. Specifically, Mr. Giles argues that the "evidence was insufficient to show Mr. Giles used force, fraud, or coercion to cause [AV-1] to engage in commercial sex acts. It is argued that the acts were voluntary and done so as part of a mutual plan between Mr. Giles and [AV-1]." *Id*.

The Government argues that it presented sufficient evidence "for a rational juror to conclude that Giles coerced AV-1 to engage in commercial sex work." ECF No. 321, Page.3102. The Court agrees.

At trial the Government presented the following evidence that would allow a rational trier of fact to find that Mr. Giles knew or was "in reckless disregard of the fact … that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause [AV-1] to engage in a commercial sex act." § 1591(a).

First, AV-1 testified that when she moved in with Mr. Giles, she was "practically homeless," was either 22 or 23 years old, had a daughter,

and was addicted to Percocet. ECF No. 304, PageID.2292, 2282–83, 2301. AV-1 also testified that she had cancer at this time and that Mr. Giles was aware of this fact. *Id.* at PageID.2282–83, 2301.

Second, AV-1 testified that she had sex with Mr. Giles because she "knew that he was my last chance. If I—if I couldn't stay with him, I didn't have nowhere else to go." *Id.* at PageID.2297.

Third, in response to the question, "When you were in Pembroke with Mr. Giles, did you feel like you had any power or control?" AV-1 responded "I don't know. I—I don't know. I don't know." *Id.* at PageID.2361. When asked "Did you feel like he had power and control?" AV-1 responded "I'm in his house, so of course he had power and control. At the drop of a dime, I can literally be kicked out on the streets in the middle of the night with a newborn baby. I was doing what I was told." *Id.* at PageID.2362.

Fourth, the Government introduced text messages in which Mr. Giles dictated which sexual acts AV-1 should perform. ECF No. 314, PageID.2902.

Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that Mr. Giles knew or was "in reckless disregard of the fact … that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause [AV-1] to engage in a commercial sex act." § 1591(a). Indeed, as discussed above, courts have held that exploiting a mother's fear of homelessness amounts to a serious

15

harm in violation of § 1591(a). *See*, *e.g.*, *Glagola*, 701 F. Supp. 3d at 284; *Shine*, 2022 WL 761520, at *2. Additionally, courts have held that "recruiting young female addicts to prostitute themselves" can be coercive under § 1591(a). *United States v. Mack*, 808 F.3d 1074, 1078 (6th Cir. 2015); *United States v. Wysinger*, 64 F.4th 207, 212 (4th Cir. 2023) (collecting cases); *Shine*, 2022 WL 761520, at *2 (holding that "exploit[ing] victims' fear of … withdrawal" is evidence of coercion under § 1591(a)).

> For his part, Mr. Giles argues that
>
> Evidence presented at trial showed that [AV-1] and Mr. Giles had a lengthy relationship which seemed to involve mutual participation in commercial sex. It appeared that the commercial sex stopped after the first raid of Mr. Giles home. [AV-1] continued to live at the home. During this time, [AV-1]was sometimes not sleeping at the home, having friends at the home, and her ultimate reason for calling law enforcement seemed to involve issues between Mr. Giles and her involvement with a female friend. During this time, Mr. Giles was never violent and was fully forthcoming regarding his electronics passwords and searching his home when law enforcement raided it.

ECF No. 317, PageID.3019.

It is unclear on what basis Mr. Giles is arguing that such evidence controverts an element of coercion. In any case, Mr. Giles's argument asks the Court to weigh the evidence presented to the jury. However, under Rule 29(c), the Court will not "weigh the evidence presented, consider the credibility of witnesses, or substitute its judgment for that

of the jury." *Driver*, 535 F.3d at 429. Given the evidence presented, when viewed in the light most favorable to the prosecution, and giving the Government the benefit of all inferences that could reasonably be drawn from the testimony, *see id.*, any rational trier of fact could find that Mr. Giles knew or was "in reckless disregard of the fact … that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause [AV-1] to engage in a commercial sex act." § 1591(a). Accordingly, Mr. Giles has not met the burden of Rule 29(c). *Emmons*, 8 F.4th at 478.

Nor, in light of the testimony discussed, does the Court conclude that the verdict is unreasonable under Rule 33. *See Burks*, 974 F.3d at 628 (finding that a verdict is only unreasonable in such exceptional circumstances when a "trial[] featur[es] accounts that defy physical realities or collapse in on themselves due to internal inconsistencies" (cleaned up)).

Accordingly, for the reasons above, Mr. Giles's motion for judgment of acquittal or for a new trial is **DENIED** as to Count 3.

### C. Count 4

Under Count 4, the jury found Mr. Giles guilty of commission of a violation of 18 U.S.C. § 2260A, which makes it unlawful for a person required to register as a sex offender to commit a felony offense involving a minor. ECF No. 307, PageID.2579.

17

### 1. Statutory Background

Section 2260A states that "[w]hoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section … 1591 … shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision." Accordingly, the jury was instructed that one of the elements the Government needed to prove beyond a reasonable doubt was "that at the time the defendant committed a felony offense involving a minor, the defendant was required to register as a sex offender under Federal or other laws." ECF No. 306, PageID.2555.

At trial, the Government introduced evidence that Mr. Giles was required to register as a sex offender under Michigan's Sex Offenders Registration Act ("SORA"). Mich. Comp. Law. § 28.723–36, *see* ECF No. 314, PageID.2951 (testimony regarding SORA registration requirement).

The Michigan Legislature originally enacted SORA in 1994. *People v. Betts*, 507 Mich. 527, 533 (2021). Since then, the statute has been amended multiple times. *Id.* at 534. As relevant here, the statute was amended in 2011, Mich. Comp. Law. § 28.723–36 (2011) ("SORA (2011)"), and in 2020, Mich. Comp. Law. § 28.723–36 (current) ("SORA (2021)"). The current version of SORA took effect on March 24, 2021. *Id.* Count 4 of the Superseding Indictment charges Giles with committing "a felony offense involving a minor under section 18 U.S.C. § 1591(a)" while "being required by Federal and other law to register as a sex offender" "[f]rom

18

on or about February 1, 2021 through on or about April 10, 2021." Giles' charged conduct thus straddles the time period between SORA (2011) and SORA (2021), with the newer statute taking effect on March 24, 2021—during the time frame when Giles was committing the offense against a minor in violation of § 1591(a).

### 2. Background

At trial, the Government introduced testimony by Jenelle Schkade, an employee of the Michigan State Police Sex Offender Registration unit. ECF No. 314, PageID.2946. Ms. Schkade testified that she "review[ed] [Mr. Giles's] official sex offender registration information" and that Mr. Giles had been convicted of criminal sexual conduct of the first degree, "an offense that was a Tier 3 offense," requiring him to register as a sex offender in 2021. *Id.* at PageID.2948–49, 2955. Ms. Schkade further testified that the offense which required Mr. Giles to register as a sex offender occurred in 1986. *Id.* at PageID.2954.

On cross-examination, Ms. Schkade was asked whether she had checked to see if Mr. Giles had been affected by "cases that have come up recently that have taken people off of [the] status" of lifetime registration. *Id.* at PageID.2954. In response, Ms. Schkade stated that "we are still waiting further direction from the Attorney General's Office." *Id.* Later, on redirect, Ms. Schkade testified unequivocally that in 2021, Mr. Giles was required to register as a sex offender. *Id.* at PageID.2955.

In the present motion, Mr. Giles concedes that he "was convicted in 1986 of MCL §750.520B(1)(d), otherwise known as criminal sexual conduct first degree" and that he "was registering as a sex offender." ECF No. 317, PageID.3020. However, Mr. Giles argues that the Court should enter a judgment of acquittal in his favor because both the 2011 and the 2021 versions of SORA have been found to violate the ex post facto clause when applied retroactively and, accordingly, that "Mr. Giles was not actually a constitutionally registered sex offender at the time of this case." *Id.* at PageID.3020.[2] The Government disagrees. ECF No. 321, PageID.3103–07.

Count Four of the Superseding Indictment charges Mr. Giles with committing a felony offense involving a minor when he was required to register as a sex offender "[f]rom on or about February 1, 2021 through on or about April 10, 2021." ECF No. 60, PageID.269. Because SORA (2021) took effect within this time period (specifically, on March 24,

---

[2] Mr. Giles also argues that that the Court should enter a judgment of acquittal in his favor because "the Government did not introduce proofs that Mr. Giles was registered under SORNA," *id.* at PageID.3023. However, the plain text of § 2260A does not necessitate an individual to actually be registered as a sex offender. Instead, § 2260A covers individuals who are "*required … to register* as a sex offender" and "commit[] a felony offense involving a minor under section … 1591." § 2260A (emphasis added). Thus, the Court rejects this argument. Notably, however, no evidence was introduced concerning whether Mr. Giles was required to be registered under SORNA, the federal sex offender registry.

2021), Mich. Comp. Law. § 28.723–36 (current); *Does v. Whitmer*, 751 F. Supp. 3d 761, 780 (E.D. Mich. 2024) (Goldsmith, J.) ("*Whitmer I*"), and because there is sufficient evidence in the record for a rational juror to conclude that the felonies involving minors for which Mr. Giles was convicted extended beyond March 24, 2021, *see* ECF No. 314, PageID.2844–45 (witness testifying that "sex ad[s]" of MV-2 were posted on March 24, 2021 and March 31, 2021, and that MV-2 was living at Mr. Giles's house at the time); *see United States v. Baker*, 152 F.4th 715, 721 (6th Cir. 2025) (§ 2260A requires that the defendant was required to register "at the time of the offenses"); *United States v. Bobal*, 981 F.3d 971, 974 (11th Cir. 2020) (same), the Court must address whether the ex post facto clause bars the retroactive application of either SORA (2011) or SORA (2021) to Mr. Giles. If so, the Court must decide whether a finding that SORA (2011) and SORA (2021) are unconstitutional as applied to Mr. Giles means that he was not required to register as a sex offender under those statutes between February 1, 2021 through on or about April 10, 2021—the time Mr. Giles committed sex trafficking of a minor. The Court addresses the constitutionality of each statute in turn.

### 3. Whether SORA (2011) is unconstitutional as applied to Mr. Giles

With regard to SORA (2011), Mr. Giles argues that "[a]lthough Mr. Giles was registering as a sex offender, a series of cases were decided in Michigan and in the Sixth Circuit that imply that he should not have

been on the Michigan sex offender registry." *Id.* Mr. Giles contends that "[g]iven the unconstitutionality of the Michigan sex offender registry to individuals whose convictions predated its inception, it appears Mr. Giles was not actually a constitutionally registered sex offender at the time of this case." *Id.* In support, Mr. Giles points to *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), and *Betts*, 507 Mich. 527. *Id.* at PageID.3020.

At trial, the Government sought to prove the elements of § 2260A by introducing evidence showing that Mr. Giles was required by SORA to register as a sex offender in 2021 as a result of his 1986 conviction of criminal sexual conduct of the first degree. *See*, *e.g.*, ECF No. 314, PageID.2951. Several federal and Michigan courts have conclusively held that the provisions of SORA (2011) violated the ex post facto clause of the Constitution by imposing new forms of punishment for conduct occurring before the enactment of the statute. For this reason, these courts have concluded that SORA (2011) may not be retroactively applied.

First, in 2016, the Sixth Circuit addressed a challenge to the constitutionality of SORA (2011) by six registered sex offenders. *See Does #1-5*, 834 F.3d 696. The Sixth Circuit found that "[t]he retroactive application of SORA's … 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Id.* at 706.

Then, on July 27, 2021, the Supreme Court of Michigan weighed in, concluding that "the 2011 SORA, when applied to registrants whose criminal acts predated the enactment of the 2011 SORA amendments,

violates the constitutional prohibition on ex post facto laws." *See Betts*, 507 Mich. at 574.

Accordingly, because Mr. Giles's conviction for criminal sexual conduct occurred in 1986, SORA (2011), including its registration requirement, is unconstitutional as to Mr. Giles.

The Government argues that *Does #1-5* and *Betts* held only "that certain provisions from the 2006 and 2011 SORA amendments violated the *ex post facto* clause: (1) the exclusion zones introduced in 2006, and (2) the three-day, in-person registration requirement introduced in 2011." ECF No. 321, PageID.3105. Thus, the Government argues,

> These cases address the constitutionality of certain amendments to SORA and establish that registrants with a qualifying offense committed before 2011 cannot now be prosecuted for *violations of certain registry provisions*. … These cases do not establish that individuals who committed qualifying sexual offenses before SORA was enacted are not required to register with SORA in the first place.

*Id.* at 3106.

The problem with the Government's argument is that the Sixth Circuit plainly held that *the entirety* of SORA (2011), including its registration requirements, was unconstitutional as retroactively applied. *See Does #1-5*, 834 F.3d at 706 ("The retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease."). In fact, the Sixth Circuit specifically addressed SORA's

registration requirement, finding that it "resemble[d] traditional shaming punishments." *Id.* at 702–03.

Further, contrary to the Government's argument, the holding of *Does #1-5* is not limited to individuals who were "prosecuted for *violations of certain registry provisions*." ECF No. 321, PageID.3106. Instead, the plaintiffs in *Does #1-5* were "registered 'Tier III' sex offenders currently residing in Michigan" who have been "significant[ly] impact[ed]" by SORA (2011) as a result of SORA (2011)'s various provisions, including its registration requirement. *Does #1-5*, 834 F.3d at 698. None of them appear to have been prosecuted for violations of SORA (2011)'s other kinds of registry provisions. *Id.*

Subsequent case law affirms this reading of the Sixth Circuit's opinion. On remand, the district court entered judgment, declaring that "retroactive application of the [SORA's] 2006 and 2011 amendments violates the Ex Post Facto Clause of the U.S. Constitution" and enjoining the Governor of the State of Michigan and the Director of the Michigan State Police, "their officers, agents servants, employees, and attorneys, and other persons in active concert or participation with them, from enforcing the 2006 and 2011 SORA amendments against the plaintiffs." *See* Stipulated Final Judgment on Remand, *Does et al v. Snyder et* al, No. 12-11194 (E.D. Mich. Jan. 26, 2018), ECF No. 153, PageID.6514.

A subsequent district court opinion applied *Does #1-5* "expansive ruling" to a class that includes Mr. Giles. *Doe v. Snyder*, 449 F. Supp. 3d

719, 728 (E.D. Mich. 2020) (Cleland, J.). The court found that it could not "now impose additional limits to the Sixth Circuit's decision and must read [*Does #1-5*] as broadly—and quite clearly—invalidating all portions of the 2006 and 2011 amendments as applied to the members of the ex post facto subclasses," *id.* at 729, which plainly includes Mr. Giles, *id.* at 725–26 (defining the ex post facto subclasses as "all people who are or will be subject to registration under SORA … who committed their offense or offenses requiring registration before January 1, 2006, and who have committed no registrable offense since.").

In *Doe*, 449 F. Supp. 3d 719, Judge Cleland also firmly rejected the notion that any portions of SORA (2011), such as the registration requirement itself, could survive. Instead, the court concluded that the unconstitutional portions of SORA were "not severable" and that "SORA *in toto* cannot be applied to any members of the ex post facto subclasses." *Id.* at 732–33: *id.* at 733 ("Without the 2011 amendments, SORA registrants and law enforcement officials have no guidance for *who* must register, *what* events must be reported, *where* registrants must report, *how* often registrants must report, or *when* registrants become eligible for removal from the registry. Michigan law makes clear that SORA cannot be enforced given such glaring omissions."). In other words, SORA (2011), *in toto*, cannot be applied to Mr. Giles.

In 2021, the Michigan Supreme Court came to a similar conclusion, ruling that "the retroactive application of the 2011 SORA is

25

unconstitutional," and that "severability and revival are inappropriate tools to remedy the constitutional violation." *Betts*, 507 Mich. at 563, 573. Specifically, the Michigan Supreme Court held that no "provisions of the 2011 SORA can be given retroactive effect without violating a registrant's constitutional ex post facto protections," and that revival of earlier versions of SORA was not appropriate. *Id.* at 563, 573.

While *Betts* arises in the context of an individual being *prosecuted* for failure to abide by the registration requirements of SORA (2011), *Betts* specifically found that SORA (2011)'s registration requirements constituted punishment, a factor weighing in favor of a finding of unconstitutionality. *Id.* at 551.

*Does #1-5,* its progeny, and *Betts* are clear: no provision of SORA (2011) and no provision of earlier versions of SORA may be applied retroactively. Thus, during the period while SORA (2011) was in effect— that is, until it was superseded by SORA (2021) on March 24, 2021—the application of the SORA (2011)'s registration requirement, as applied to individuals in Mr. Giles's position—who was convicted in 1986—violated the ex post facto clause.

### 4. Whether SORA (2021) is unconstitutional as applied to Mr. Giles

The Government argues that "[e]ven assuming Giles' registration requirement under the 2006 and 2011 versions of SORA violates the *ex*

*post facto* clause, the requirement that he register under SORA as amended in 2021 does not." ECF No. 321, PageID.3107.

Specifically, the Government argues that "Michigan courts have repeatedly found that the retroactive application of the 2021 amendments to individuals with qualifying sex offenses, and specifically Criminal Sexual Conduct in the First Degree, does not violate the *ex post facto* clause." *Id.* (citing *People v. Kiczenski*, No. 364957, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024); *People v. Montgomery*, No. 368817, 2025 WL 2691647 (Mich. Ct. App. Sept. 19, 2025); *People v. Johnson*, No. 366499, 2025 WL 2315992 (Mich. Ct. App. Aug. 11, 2025)).

In response, Mr. Giles points out that the Honorable Mark A. Goldsmith of this court recently found that retroactive application of SORA (2021) also violated the ex post facto clause and was unconstitutional. ECF No. 322, PageID.3112 (citing *Whitmer I*, 751 F. Supp. 3d 761). Mr. Giles also argues that

> Given the influence of the Federal Judiciary in these issues, coupled with the Michigan Supreme Court not yet weighing in on whether SORA 2021 can be applied Ex-Post Facto, it is argued that the Michigan Court of Appeals decisions should be looked at with a grain of salt, considering *Kiczenski* is currently on application in the Michigan Supreme Court (See Michigan Supreme Court Case No. 167908).

*Id.* at PageID.3112.

This is not an easy question because two courts have reached different conclusions on the question of whether SORA (2021) may be

retroactively applied. Judge Goldsmith, in *Whitmer I*, 751 F. Supp. 3d at 784–95 held that SORA (2021) violated the ex post facto clause while a panel of the Court of Appeals of Michigan, *see Kiczenski*, 2024 WL 4595174, at *5-11 (Murray, J.), reached the opposite conclusion.[3] Both of these opinions are on appeal to the Sixth Circuit and the Michigan Supreme Court, awaiting review by those higher courts. But the Court must exercise its own best judgment on the question to resolve the motion before it. The Court will therefore discuss the different approaches of *Whitmer I* and *Kiczenski*.[4]

The Supreme Court employs a two-part framework for determining whether a law constitutes retroactive punishment in violation of the Ex Post Facto Clause of the Constitution, *see* U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law."): "(1) Did the legislature

---

[3] The Court also notes that the briefing by the parties on this question was limited. *See* ECF No. 321, PageID.3106–07; ECF No. 322, PageID.3113–14. However, in light of Mr. Giles's motion to represent himself, *see* ECF No. 325, which was granted on December 4, 2025, supplementary briefing will not be helpful.

[4] Additionally, in 2024, the Supreme Court of Michigan found that SORA (2021) constituted cruel or unusual punishment under the Michigan Constitution as applied to non-sexual registrants. *People v. Lymon*, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024). As part of its analysis, the Michigan Supreme Court employed the same framework relevant to determining whether a law constitutes retroactive punishment in violation of the Ex Post Facto Clause of the Constitution. Accordingly, *Lymon* has some relevance to the question before the Court today.

intend to impose punishment? And (2), if not, is the statutory scheme so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Does #1-5*, 834 F.3d at 700 (cleaned up, citing *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

With regard to the first step of the analysis—legislative intent—the various courts considering the question are in accord that the Michigan legislature's intent in adopting SORA (2021) was *not* punitive. *Whitmer I*, 751 F. Supp. 3d at 789; *Kiczenski*, 2024 WL 4595174, at *5; *Lymon*, 2024 WL 3573528, at *5. The Michigan legislature included the following statement of purpose in SORA (2021):

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

Mich. Comp. Laws Ann. § 28.721a.

In the absence of any legislative intent to impose a punishment, the Court must turn to the second step of the analysis—whether SORA

(2021)'s actual effects are punitive. The Supreme Court has identified five factors relevant "in this kind of case":

> (1) Does the law inflict what has been regarded in our history and traditions as punishment?
> (2) Does it impose an affirmative disability or restraint?
> (3) Does it promote the traditional aims of punishment?
> (4) Does it have a rational connection to a non-punitive purpose?
> (5) Is it excessive with respect to this purpose?

*Does #1-5*, 834 F.3d at 701. The Court considers each factor in turn.

As to the first factor, courts have uniformly concluded that SORA (2021) resembles traditional forms of punishment. *Whitmer I*, 751 F. Supp. 3d at 791; *Kiczenski*, 2024 WL 4595174, at *6; *Lymon*, 2024 WL 3573528, at *7. Accordingly, this factor weighs toward a finding that SORA (2021) constitutes punishment.

As to the second factor, courts have also agreed that SORA (2021) imposes an affirmative disability or restraint—although less significant than those imposed by SORA (2011). *Whitmer I*, 751 F. Supp. 3d at 791; *Kiczenski*, 2024 WL 4595174, at *6; *Lymon*, 2024 WL 3573528, at *10. This factor too weighs toward a finding that SORA (2021) constitutes punishment.

As to the third factor, again the courts have recognized that SORA (2021) does promote the traditional aims of punishment. *Whitmer I*, 751 F. Supp. 3d at 792; *Kiczenski*, 2024 WL 4595174, at *7; *Lymon*, 2024 WL 3573528, at *11. Accordingly, this factor weighs toward a finding that SORA (2021) constitutes punishment.

As to the fourth factor, there is also a consensus among the courts that SORA (2021) is rationally connected to a non-punitive purpose. *Whitmer I*, 751 F. Supp. 3d at 795; *Kiczenski*, 2024 WL 4595174, at *8; *Lymon*, 2024 WL 3573528, at *12. Accordingly, this factor weighs against a finding that SORA (2021) constitutes punishment. This factor "is a most significant factor in [the] determination that the statute's effects are not punitive." *Does #1-5*, 834 F.3d at 704 (cleaned up).

As to the fifth factor, whether the statute is excessive with respect to its purpose, courts have diverged in their conclusions. As to applying SORA (2021) to non-sexual offenders, in *Lymon*, the Michigan Supreme Court held

> that the restraints it imposes on non-sexual offenders are excessive. Such offenders are branded dangerous sex offenders even though their crimes contained no sexual component and even though there has been no determination that they pose such a risk of harm to the community.

*Lymon*, 2024 WL 3573528, at *13. Additionally, *Lymon* noted the "uncertainty of SORA's efficacy in general." *Id.*

In *Whitmer I*, the district court found that "SORA 2021 exacts a heavy toll on registrants. This includes requiring frequent in-person reporting, publishing personal information online, and often requiring registration for life." *Whitmer I*, 751 F. Supp. 3d at 795. Additionally, the court noted there "is a spirited debate regarding [SORA (2021)'s] effectiveness, particularly as it relates to reducing recidivism." *Id.* Thus,

31

the court "conclude[d] that SORA 2021 is excessive for purposes of its ex post facto analysis." *Id.*

In *Kiczenski*, the Court of Appeals of Michigan concluded that the restrictions of SORA (2021) "are not excessive when applied to the public safety concerns the statute addresses with respect to sex offenders." *Kiczenski*, 2024 WL 4595174, at *9. The court noted that the question of the efficacy of SORA was unclear and that the research on the recidivism rate for sex offenders has yielded "no universally accepted conclusion." *Id.* at *10.

The Court also notes that the analysis of this factor in the Sixth Circuit's *Does #1-5* decision is helpful—even though that case considered the excessiveness question in the context of assessing the impact of SORA (2011). Specifically, *Does #1-5* found that there is "scant support for the proposition that SORA in fact accomplishes its professed goals." *Does #1-5*, 834 F.3d at 704. The Sixth Circuit noted that

> One study suggests that sex offenders … are actually *less* likely to recidivate than other sorts of criminals. Even more troubling is evidence in the record supporting a finding that offense-based public registration has, at best, no impact on recidivism. In fact, one statistical analysis in the record concluded that laws such as SORA actually *increase* the risk of recidivism, probably because they exacerbate risk factors for recidivism by making it hard for registrants to get and keep a job, find housing, and reintegrate into their communities.

*Id.* at 704–05 (citations omitted). Accordingly, the Sixth Circuit concluded that the punitive effects of SORA (2011)'s restrictions—albeit more restrictive than those of SORA (2021)—"far exceed even a generous assessment of their salutary effects." *Id.* at 705. *Whitmer I*'s evidentiary findings regarding SORA (2021) lent additional support to the Sixth Circuit's assessment of the uncertainty of SORA's efficacy. *Whitmer I*, 751 F. Supp. 3d at 792–95.

The inquiry under the fifth factor "is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy." *Doe*, 538 U.S. at 105. Instead, "[t]he question [before the court] is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.* The court in *Whitmer I* specifies SORA (2021)'s burdensome requirements as including "frequent in-person reporting, publishing personal information online, and often requiring registration for life." 751 F. Supp. 3d at 795. It balanced these significant burdens against the questionable effectiveness of such registration schemes in actually reducing recidivism. *Id.* Considering the "heavy toll on registrants" and the questionable efficacy of SORA, this Court agrees with the conclusion reached by the court in *Whitmer I* and concludes that SORA (2021) "is excessive for purposes of its ex post facto analysis." *Whitmer I*, 751 F. Supp. 3d at 795. Although the Michigan Court of Appeals reached the opposite conclusion in *Kiczenski*, 2024 WL 4595174, at *11, the reasons listed by Judge Goldsmith in *Whitmer I* for

33

concluding that the statute's requirements create significant burdens akin to punishment are more convincing than the grounds relied upon by the Michigan Court of Appeals, which mainly focuses on the inconclusive nature of the studies regarding the effectiveness of registration statutes in combatting recidivism and the fact that SORA (2021) removed the most restrictive provisions of the 2011 statute.

Taking all of these factors into account, the Court finds that SORA (2021) constitutes punishment. *See id.* ("Taking all the … factors into account supports a finding that SORA 2021 constitutes punishment."). Thus, applying SORA (2021) to individuals in Mr. Giles's position—who was convicted in 1986—is a violation of the ex post facto clause.

Nor can the reporting requirement, or indeed, any portions of SORA (2021), be saved by severing the unconstitutional portions of the law. Following *Whitmer I*, in 2025, Judge Goldsmith ruled that "severing specific provisions of SORA 2021 cannot be reconciled with what [the Michigan Supreme Court has] said Michigan law requires." *Does v. Whitmer*, 773 F. Supp. 3d 380, 392 (E.D. Mich. 2025) (Goldsmith, J.) ("*Whitmer II*"). Accordingly, the court "enjoin[ed] enforcement of SORA 2021 entirely as to registrants who committed their offenses before July 1, 2011." *Id.*

As it found with respect to SORA (2011), the Court concludes that SORA (2021) is unconstitutional as applied to Mr. Giles.

### 5. Whether Mr. Giles was required to register under SORA

The Court concludes that SORA (2011) and SORA (2021), including their registration requirements, are unconstitutional as applied to Mr. Giles. However, the Government's position raises the question: even if the SORA statutes are unconstitutional on ex post fact grounds as to Mr. Giles, does that necessarily compel the conclusion that, in 2021 when Mr. Giles committed a felony with a minor, the then-effective law did not require him to register as a sex offender? In other words, if a law is found to be unconstitutional by a court, did that law nevertheless still create obligations prior to the court's decision?

This issue has no clear resolution. On one hand, judges frequently describe unconstitutional laws as having been rendered "void." *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("[A]n act of the legislature, repugnant to the constitution … is entirely void."); *Ex parte Siebold*, 100 U.S. 371, 376–77 (1879) ("An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment."). This suggests that an unconstitutional law has never been a law and has always been void. *See Franklin v. Navient, Inc.*, 534 F. Supp. 3d 341, 345 (D. Del. 2021) (Bibas, J.) ("When a court finds a law unconstitutional, it finds that it is 'void, and is as no law' from the day it is passed." (emphasis added)).

However, this view of the effect of a court holding a law unconstitutional is not uniformly accepted. *See*, *e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 469 (1974) ("Of course, a favorable declaratory judgment … cannot make even an unconstitutional statute disappear." (citation omitted)); *The Writ-of-Erasure Fallacy*, Jonathan Mitchell, 104 VA L. Rev. 933, 936 (2018) ("a statute continues to exist, even after a court opines that it violates the Constitution, and it remains a law until it is repealed by the legislature that enacted it"); Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 181 (7th ed. 2015) ("[A] federal court has no authority to excise a law from a state's statute book."). This perspective suggests that although courts can "decline to enforce a[n unconstitutional] statute in a particular case or controversy" or "enjoin executive officials from taking steps to enforce a[n unconstitutional] statute," Mitchell, at 936, a law found to be unconstitutional still created (and continues to create) lawful obligations, id. at 1008 ("*Shelby County* did not erase or revoke section 4(b), so it does not absolve covered jurisdictions of their statutory obligation to seek preclearance.").

To resolve the issue raised by Mr. Giles's motion, the Court must take a side in this debate, and it concludes that the former view is more persuasive. An individual cannot be said to have been *required* to take certain actions by a law that is not constitutional as applied to him. To hold otherwise would allow individuals to face criminal sanctions under

statutes such as § 2260A based on a predicate legal status that arises solely from another law that is unconstitutional as applied to them. That cannot be. *Cf. Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004) ("New *substantive rules* generally apply retroactively [because such new substantive rules] necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." (citations omitted)). Instead, when a court is faced with "an unconstitutional law" the court must "simply … ignore it." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring). The court must "decide[] the case 'disregarding the [unconstitutional] law,' because a law repugnant to the Constitution 'is void, and is as no law.'" *Id.* (citing *Marbury*, 1 Cranch at 178, and *Ex parte Siebold*, 100 U.S. at 376).

Thus, if the then-effective versions of SORA are unconstitutional as applied to Mr. Giles, then Mr. Giles cannot be said to have been required to register as a sex offender under SORA at the time he committed sex trafficking of a minor. Accordingly, the Court concludes that Mr. Giles was not required to register as a sex offender under SORA (2011) or under SORA (2021). Given that Mr. Giles was not required to register as a sex offender under SORA (2011) or SORA (2021), which were unconstitutional as applied to him, and given that the Government has offered no evidence or suggestion that Mr. Giles was required to register as a sex offender under a different law, the Court finds that the evidence

is insufficient to sustain a conviction under 18 U.S.C. § 2260A, as alleged in Count 4.

Accordingly, the Court **GRANTS** Defendant's motion for a judgment of acquittal on Count 4. *See*, *e.g.*, *United States v. Eychaner*, 326 F. Supp. 3d 76, 105 (E.D. Va. 2018) (holding that "because a fictional cartoon character is not a 'person,' § 2260A's 'involving a minor' element was not met when [defendant] attempted to receive obscene cartoon images" and granting a judgment of acquittal).

In light of this conclusion, Mr. Giles's motion for a new trial is **DENIED AS MOOT** as to Count 4.

## IV.  CONCLUSION

For the reasons explained above, Defendant Giles's motion for judgment of acquittal (ECF No. 317) is hereby **DENIED IN PART** as to Counts 1, 2, and 3 and is **GRANTED IN PART** as to Count 4. Defendant Giles's motion for a new trial is **DENIED** as to all counts.

**SO ORDERED.**

Dated: December 5, 2025          s/Terrence G. Berg
_____
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE