UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:21-CR-20398-TGB-KGA** |
| Plaintiff, | |
| vs. | HON. TERRENCE G. BERG |
| **KEVIN LAVON GILES,** | **ORDER OF RESTITUTION** |
| Defendant. | |

After a jury trial, Defendant Kevin Giles was convicted of two counts of Sex Trafficking of Children, 18 U.S.C. § 1591(a), one count of Sex Trafficking by Force, Fraud, and Coercion, § 1591(a), and one count of an Offense Involving a Minor by a Registered Sex Offender, 18 U.S.C. § 2260A. ECF No. 307. At Mr. Giles's sentencing, the Government requested restitution as to two of Mr. Giles's victims—Adult Victim 1 ("AV-1") and Minor Victim 2 ("MV-2").

On January 22, 2026, the Court held a restitution hearing. On January 26, 2026, the Government filed a brief in support of the restitution request, ECF No. 363, and Mr. Giles responded on February 6, 2026, ECF No. 364.

The Government is seeking $300 in restitution for AV-1 and $4,850 in restitution for MV-2. *See* ECF No. 363. For the following reasons, the request for restitution is **GRANTED**.

# I.  LEGAL BACKGROUND

Section 1593 of Title 18 requires a court to "order restitution for any offense under this chapter." 18 U.S.C. § 1593(a). Such an order of restitution "shall direct the defendant to pay the victim … the full amount of the victim's losses." 18 U.S.C. § 1593(b)(1).

The "term 'full amount of the victim's losses' has the same meaning as provided in section 2259(c)(2)." 18 U.S.C. § 1593(b)(3).

Under 18 U.S.C. § 2259(c)(2),

> the term "full amount of the victim's losses" includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, …
>
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) reasonable attorneys' fees, as well as other costs incurred; and
> (F) any other relevant losses incurred by the victim.

Additionally, the full amount of the victim's losses includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." § 1593(b)(3).

An order of restitution under § 1593 is issued and enforced in accordance with the procedures set out in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3664(a) (applying to "orders of restitution under this title"). Under this section, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Additionally,

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

> 18 U.S.C. § 3664(e). The factors to be considered in determining how restitution shall be paid are set out in 18 U.S.C. § 3664(f)(2):Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
> (A)   the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B)   projected earnings and other income of the defendant; and
> (C)   any financial obligations of the defendant; including obligations to dependents.

§ 3664(f)(2).

Under § 3572 "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572.

In calculating a victim's losses, "the amount of restitution need not 'be proven with exactitude.'" *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *11 (6th Cir. Jan. 27, 2022) (citing *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012)). "[E]stimates are permitted as long as there exists some reasonable and reliable evidence of the victims' losses." *Id.* (citing *United States v. Williams*, 5 F.4th 1295, 1305 (11th Cir. 2021)). Nor is "mathematical precision" required. *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007). Thus, for instance, one district court determined that restitution could be established by a preponderance of the evidence by multiplying the victim's testified average daily earnings by the total number of days she worked for the defendant. *United States v. Lewis*, 791 F. Supp. 2d 81, 92 (D.D.C. 2011).

"[D]istrict courts can rely on any evidence bearing sufficient indicia of reliability to support its probable accuracy." *United States v. Baston*, 818 F.3d 651, 665 (11th Cir. 2016) (cleaned up). "That evidence includes the 'proof at trial.'" *Id.* (citation omitted). Further, "[d]istrict courts have broad discretion in choosing the procedures to employ at a restitution hearing, 'so long as the defendant is given an adequate opportunity to present his position as to matters in dispute.'" *Id.* (citation omitted).

Accordingly, "district courts are not required to hear live testimony at every restitution hearing." *Id.*

## II. DISCUSSION

The Government "requests that Giles be ordered to pay $300 in restitution to AV-1 and $4,850 in restitution to MV-2." ECF No. 363, No. PageID.3510. The Court will address each victim's restitution entitlement in turn.

### A.      Restitution as to AV-1

The Government requests "$300 in restitution for AV-1." *Id.* The Government argues that this amount "is a portion of Giles' ill-gotten gains from [AV-1's] commercial sex work." *Id.*

Specifically, the Government states that "[a]t trial, the government presented video recordings of three commercial sex dates that AV-1 did at Giles' house at Giles' direction." *Id.* Additionally, "AV-1 testified that she gave Giles a portion of the proceeds that she received from the commercial sex dates that she did while living with Giles at his house." *Id.* While "[t]he evidence does not establish exactly how much AV-1 was paid for the three dates or how much she gave Giles," *id.* at PageID.3511, the Government points to "AV-1's sex ads" which "advertised $120 for a short stay, $160 for a half hour, and $220 for one hour," *id.* at PageID.3510–11. "[B]ased on the advertised prices, the government believes that $300 is a conservative estimate of the amount of proceeds that Giles took for these three dates." *Id.* at PageID.3511.

This evidence is sufficient to allow the Court to conclude that the Government has proved by a preponderance of the evidence that AV-1 is entitled to $300 in restitution.

During trial, AV-1 testified that she and Mr. Giles agreed that she "would give him a percentage of every date." ECF No. 304, PageID.2293. AV-1 also testified that she would give the money she received from the individuals who paid her for sex to Mr. Giles, who "would get percentage out of this time." *Id.* at PageID.2295.

At trial, the Government introduced video footage of three instances in which AV-1 performed commercial sex acts in Mr. Giles's house and at his direction. ECF No. 314, PageID.2886–905. These videos showed the sexual acts and the individuals paying AV-1 for the sexual acts. *Id.* The Government also introduced evidence of advertisement advertising AV-1 for commercial sex, posted while AV-1 was staying at Mr. Giles's house. *Id.* at PageID.2854–57. These advertisements advertise $120 for a short stay, $160 for a half hour stay, and $220 for a one hour stay. *Id.* at PageID.2856.

In response, Mr. Giles states that "for 30 days she did three dates out my house I got 20 dollars from each date." ECF No. 364, PageID.3524.

Any dispute as to the proper amount of restitution is resolved by the preponderance of the evidence, with the Government bearing the burden of proof. *See* § 3664(e). The trial record does not establish the amount AV-1 was paid for the three dates or how much she gave to Mr.

6

Giles. However, as described above, at trial, the Government introduced evidence of advertisements advertising commercial sex with AV-1 at a rate of $120 to $220, depending on the length of "stay." ECF No. 314, PageID.2856. Weighing this evidence against Mr. Giles's comments in his brief that he received only $20 per date, the Court concludes that the Government has met its burden that the "labor or the value of [AV-1's] labor," § 1593(b)(3), was at least $300. Specifically, even assuming that each of the videotaped visits were "short stays," advertised at $120 per "stay", the Government's estimate that these three commercial sex acts amounted to $300 of "gross income or value to the defendant," § 1593(b)(3), has been established by a preponderance of the evidence.

Accordingly, the preponderance of the evidence establishes that the "labor or the value of [AV-1's] labor," § 1593(b)(3), was at least $300.

In response to the Government's motion, Mr. Giles raises several additional arguments.

First, Mr. Giles argues that "AV-1 made it clear during trial that we was in partnership. Not once did I ever force or coercion or threaten AV-1 into anything." ECF No. 364, PageID.3523. Mr. Giles also argues that AV-1 has "made over 6 statements, many lies." *Id.* at PageID.3524. The Court rejects this argument. After a jury trial, the jury found Mr. Giles guilty of sex trafficking AV-1 by force, fraud, and coercion. ECF No. 307, PageID.2579. On December 5, 2025, the Court denied Mr. Giles's motion for judgment of acquittal or for a new trial on this count. ECF No.

7

334, PageID.3231. The Government's request for restitution is not an opportunity for Mr. Giles to relitigate the merits of his conviction.

Second, Mr. Giles argues that under "18 U.S.C. 3663(a)(1)(A) restitution is limited to actual loss." ECF No. 364, PageID.3524. This is an incorrect statement of the law. Specifically, under § 1593(b)(3), the full amount of the victim's losses includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act."

Third, Mr. Giles argues that "the Government is not looking at my loss AV-1 came to my house with lies only to use me and my house, she never paid rent she only gave me 60 dollars from three dates what about the food she was eating up for 30 days, shelter, clothing, child care other expended. … I don't feel I owe AV-1 any thing … AV-1 owe me for shelter, food, we're even." ECF No. 364, PageID.3524. This argument lacks merit. Section 1593(b)(3) considers *gross* income or value to the defendant, not *net* income or value, subtracting expenditures incurred by the Defendant in trafficking the victim. Nor does anything in the case law suggests that a person convicted of sex trafficking by force, fraud, or coercion may subtract from his restitution obligations any costs incurred in trafficking the victim. In any case, Mr. Giles submits no evidence as to the costs he purportedly incurred.

Thus, the Court **GRANTS** the request of restitution of $300 as to AV-1.

### B.    Restitution as to MV-2

The Government requests "$4,850 in restitution for MV-2 based on Giles' ill-gotten gains from her commercial sex work." ECF No. 363, PageID.3511. Specifically, the Government requests "$350 in rent that Giles required MV-2 to pay him using proceeds from her commercial sex work" and "$4,500 in proceeds of [MV-2]'s commercial sex dates that Giles took from MV-2." *Id.*[1]

The Court will address these in turn.

### *1. Rent*

The Government "requests $350 in restitution for the rent that MV-2 paid Giles using the proceeds of her commercial sex work." *Id.* at PageID.3511.

Specifically, the Government states that while MV-2 lived in Mr. Giles's house, she "engaged in commercial sex dates at his direction." *Id.* The Government states that, according to MV-2's trial testimony, while MV-2 was living in Mr. Giles's house, Giles "required [MV-2] to pay $300 to $400 per month in rent to stay at his house, and that she would make that money by doing sex work." *Id.* The Government states that this

---

[1] The Government's brief refers to MV-1 in the quoted passage. The Court understands this to be a clerical error and substitutes "MV-2" in brackets.

9

testimony is "corroborated by a text message exchange between MV-2 and Giles, wherein they outline the amount of money MV-2 owes Giles, including $350 for rent." *Id.* at PageID.3512.

The Government has proved by a preponderance of the evidence that MV-2 is entitled to $350 in restitution for the rent that MV-2 paid to Mr. Giles.

At trial, MV-2 testified that Mr. Giles informed her that he would charge her $300–400 in monthly rent. ECF No. 303, PageID.2050. MV-2 testified that when she informed Mr. Giles that she didn't have a job, Mr. Giles told her that she "could make money" by doing commercial sex work. *Id.* at PageID.2050–51. As MV-2 testified, Mr. Giles told her that "we had to pay rent and—well, he didn't tell me at first, but, eventually, we had to pay rent and pay him from the dates that we did." *Id.* at PageID.2057.

MV-2 also testified that she would pay Mr. Giles from the money she received for doing commercial sex work at Mr. Giles's house. *Id.* at PageID.2062.

Additionally, at trial the Government introduced evidence of a March 24, 2021 text message exchange between Mr. Giles and MV-2 in which Mr. Giles informed her that she owed him $350 in rent. ECF No. 313, PageID.2718–19.

Accordingly, the Government has proven, by a preponderance of the evidence, that MV-2 paid $350 in rent for her stay at Mr. Giles's house.

The Court finds that this rent constitutes the "victim's losses" under § 2259(c)(2). The Government has proven, by a preponderance of the evidence, that MV-2 obtained the money for that rent by doing commercial sex work in Mr. Giles's house, at Mr. Giles's conviction. This commercial sex work was the factual basis for which Mr. Giles was convicted of sex trafficking of children under § 1591(a).

### 2. Proceeds of MV-2's Commercial Sex Work

Additionally, the Government requests $4,500 in proceeds of MV-2's commercial sex work which Mr. Giles required her to pay him. ECF No. 363, PageID.3512–14.

The Government states that "MV-2 testified that during the time she lived with Giles, Giles required her to pay him some portion of the proceeds of her commercial sex work, in addition to paying him rent." *Id.* at PageID.3512. The Government estimates this amount to be $4,500 based on following calculations:

> MV-2 lived with Giles for a little less than 30 days. While there, she conducted multiple dates per day. MV-2 gave Giles a portion of the proceeds from those dates, but the exact amount is unclear. Thus, to establish a conservative estimate of the amount of proceeds that MV-2 collected, and the amount that she then gave to Giles, the government relies on the prices that Giles gave commercial sex buyers for dates with the victims.

*Id.* at PageID.3513. Specifically, the Government states that "[o]n at least two occasions, he told sex buyers that a 20-minute date costs $150." *Id.*

The Government argues that "[t]his price is consistent with the amounts of money that Giles said MV-2 owed him for her commercial sex work." *Id.*

"Although MV-2 conducted multiple dates per day, the government takes the conservative approach of using one date per day, for 30 days, to calculate the amount of Giles' ill-gotten gains." *Id.* Thus, the Government suggests multiplying $150 by 30 dates to calculate the total proceeds of MV-2's commercial sex work. *Id.* at PageID.3514.

The Government has proven by a preponderance of the evidence that MV-2 is entitled to $4,500 in restitution for the proceeds of commercial sex work which MV-2 paid to Mr. Giles. However, the Court calculates the proceeds of the commercial sex work which MV-2 paid to Mr. Giles differently from the way the Government calculates it.

Regarding the length of stay, the Government does not provide a citation for its claim that MV-2 lived with Giles for a little less than 30 days. ECF No. 363, PageID.3513. Instead, the evidence in the record shows that MV-2 stayed at Mr. Giles's house for two to three weeks. Specifically, at trial, a social worker testified that Mr. Giles told him that MV-1 and MV-2 were living at his house for about three weeks. ECF No. 303, PageID.2001. Based on text message evidence introduced at trial, ECF No. 313, PageID.2711, and testimony by Special Agent Szczygiel, *id.* at PageID.2623, MV-2 had been living at Mr. Giles's house as early as March 22, 2021. Additionally, text message evidence introduced at trial

12

indicates that MV-2 stopped living at Mr. Giles's house on April 5, 2021. *Id.* at PageID.2668. Thus, there is evidence in the record that MV-2 lived at Mr. Giles's house for about 13 to 21 days.

Regarding the number of instances of commercial sex work, the Government's appears to significantly underestimate the number of commercial sex acts that MV-2 conducted during her time living at Mr. Giles's house. During her testimony, MV-2 estimates that she had "sex all day, every day." ECF No. 303, PageID.2066. The record contains evidence regarding the number of dates MV-2 engaged in for only one day—March 24, 2021. On that day, at 8:23 a.m., MV-2 texts Mr. Giles that she "had six people" today and that there were "two people on the way." ECF No. 313, PageID.2718.

The evidence introduced at trial does not specify the amount MV-2 paid Mr. Giles per date. However, MV-1 testified that she kept half of the money she received and gave half of the money to Mr. Giles. ECF No. 303, PageID.2126. Additionally, at trial, the Government introduced evidence of a commercial sex advertisement advertising a "stay" with AV-1 at a rate of $120–220. ECF No. 314, PageID.2852. Based on this evidence, a reasonable estimate is that MV-2 paid Mr. Giles $60–110 per date. This money roughly comports with Mr. Giles's accounting for what MV-2 owed him for the six commercial sex acts performed on March 24, 2021. Specifically, Mr. Giles texted MV-2 that she owed him $550 for the six commercial sex acts performed on that day and $350 for rent. *See* ECF

13

No. 313, PageID.2718 (Text messages sent from Mr. Giles: "How much money you owe me for today or do I got to look at the camera? … 150, 150, 100, 150, 350. This is what you owe me.").

Based on the estimated length that MV-2 stayed at Mr. Giles's house—13 to 21 days, ECF No. 303, PageID.2001; ECF No. 313, PageID.2623, 2711—the estimated number of commercial sex acts she performed per day—such as six to eight commercial sex acts performed March 24, 2021, ECF No. 313, PageID.2718—and the estimated amount MV-2 paid Mr. Giles per date—$60–110 per date, *see* ECF No. 303, PageID.2126; ECF No. 314, PageID.2852; ECF No. 313, PageID.2718, the Government has proven, by a preponderance of the evidence, that, at least, MV-2 is entitled to $4,500 in restitution for the proceeds of commercial sex work which MV-2 paid to Mr. Giles. In fact, the Court's own estimate indicate a much higher restitution amount: the Court's minimum estimate is that MV-2 performed six commercial dates a day for 13 days at a $60 profit to Mr. Giles—amounting to $4,680—the Court's maximum estimate would be that MV-2 performed eight commercial dates a day for 21 days at a $110 profit to Mr. Giles—amounting to $18,480.

### 3. Total Restitution

The Government has established, by a preponderance of the evidence, that MV-2 is entitled to $350 in restitution for rent she paid to

Mr. Giles and at least $4,500 in restitution for the proceeds of commercial sex work which MV-2 paid to Mr. Giles.

Mr. Giles's arguments to the contrary do not change this outcome.

First, Mr. Giles raises a number of arguments pertaining to the credibility of MV-2's testimony. *See* ECF No. 364, PageID.3524–25. The Court rejects this argument. MV-2 testified at trial and was subject to vigorous cross examination. The jury credited MV-2's testimony and found Mr. Giles guilty of Sex Trafficking of Children, § 1591(a), as to MV-2. MV-2's testimony, as relevant to this motion, is corroborated by MV-1's testimony, AV-1's testimony, text message exchanges, and other evidence. Accordingly, the Court finds that MV-2's testimony bears "bear[s a] sufficient indicia of reliability to support its probable accuracy." *Baston*, 818 F.3d at 665 (cleaned up).

Similarly, Mr. Giles raises a number of arguments as to his innocence and his attorney's mistakes at trial. *See* ECF No. 364, PageID.3524–25. These arguments, which are more appropriately to be addressed in Mr. Giles's pending appeal, do not undermine the Court's conclusion that the preponderance of the evidence establishes that MV-2 is entitled to $350 in restitution for rent she paid to Mr. Giles and $4,500 in restitution for the proceeds of commercial sex work which MV-2 paid to Mr. Giles.

Next, Mr. Giles argues that the text message exchange in which he informs MV-2 that she owes him "150, 150, 100, 150, 350," ECF No. 313,

15

PageID.2718, only amounts to "a total of $900 dollars," ECF No. 364, PageID.3526. However, of that amount, $350 was owed for rent and $550 was owed for a single day of commercial sex work. ECF No. 313, PageID.2718. Thus, this exchange corroborates the Government's estimate of $4,500.

Mr. Giles also argues that if "these girls [were] making this kind of money for me," a "real pimp would of kept them around." ECF No. 364, PageID.3526. This argument is meritless: Mr. Giles has been convicted of three counts of sex trafficking, and the Government has proven, by a preponderance of the evidence, that MV-2 paid Mr. Giles $4,500 for the proceeds of commercial sex work performed at Mr. Giles's direction.

For the reasons provided above, the Government has established, by a preponderance of the evidence, that MV-2 is entitled to $4,850 in restitution. Thus, the Court **GRANTS** the request of restitution of $4,850 as to AV-1.

## C.   Requirements of 18 U.S.C. § 3664

Under § 3664(f)(2),

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
> (A)   the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B)   projected earnings and other income of the defendant; and

16

> (C)  any financial obligations of the defendant; including obligations to dependents.

Mr. Giles bears the burden of proof as to these considerations. § 3664(e). However, Mr. Giles has made no attempt at offering any evidence as to these considerations, or attempted to address these considerations.

Under § 3572 "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572.

Because Mr. Giles has offered no evidence as to the considerations mentioned in § 3664(f)(2), and because under § 3572, Mr. Giles shall make his restitution payments immediately, Mr. Giles is ordered to immediately pay $300 in restitution to AV-1 and $4,850 in restitution to MV-2. The Government may file a letter within 21 days of entry of this Order suggesting how such restitution payments shall be best facilitated.

If Mr. Giles is unable to make the restitution payments immediately, he must file a letter with the Court explaining the manner in which, and the schedule according to which, the restitution is to be paid. Such a letter shall be submitted within 14 days of entry of this Order. The Government may respond to this letter as part of its letter suggesting how such restitution payments shall be best facilitated.

### III. CONCLUSION

For the reasons explained above, the Government's restitution request (ECF No. 363)—$300 in restitution for AV-1 and $4,850 in restitution for MV-2—is **GRANTED**.

**SO ORDERED.**

Dated: March 31, 2026          s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

18